## SUPREME COURT.

Louis Windmuller and others agt. Dodge & Sinclair.

*Assignment — When will be set aside.*

In a general assignment by a partnership a preference of an individual creditor of one partner invalidates the whole deed; at least, when alterations in the books of the firm clearly indicate a fraudulent intent.

*Special Term, May,* 1884.

The firm of Dodge & Sinclair made a general assignment for the benefit of creditors on the 28th day of November, 1882, with liabilities of about $150,000, and assets of about $50,000.

An action was commenced by Louis Windmuller and others by creditors' bill, to set aside the assignment on the ground

that a preference of the mother of Sinclair, one of the assignors contained in the assignment, was fraudulent and nullified the whole deed.

*Francis Lauton* and *William H. Arnoux*, for plaintiffs.

*Richard S. Newcombe* and *Albert Cardozo*, for defendants.

Van Brunt, *J.* — I regret to be compelled to come to the conclusion that the assignment in this case cannot be sustained.

That Walter S. Sinclair was indebted to his mother for the amount of the preference mentioned in the assignment seems to be reasonably established; but it does not at all appear that such money was expended by him in the business in which he was engaged, or that such debt was assumed at the time of the formation of the firm of W. S. Sinclair & Co. His business debts were assumed by that firm, and as such were entered in the books of the concern, but his individual debts do not appear to have been assumed, and it seems to be reasonably certain that some of this money, loaned by his mother to him, at least, was appropriated to the payment of his individual debts.

The fact that alterations were made in the books in the manner in which they appear, indicates beyond question a fraudulent intent. It was an attempt to impose upon those who should examine the books of the firm, and to make their books appear to show transactions which were entirely different from the truth. This circumstance seems to be of so grave a character as to stamp the whole transaction with suspicion that has not by any means been removed by the testimony offered.

I have been led irresistibly to the conclusion that Walter S. Sinclair had applied a large amount of this money received from his mother to his own individual uses, and that a considerable amount of this money had been received and expended prior to the formation of the new firm, and which had never been assumed by the new firm. The books of the firm were altered for the purpose of bringing within the

liability of the firm such debts, in order that they might be preferred in the assignment which was then being contemplated. Such being the facts, I see no way in which the assignment can be sustained.

Judgment accordingly.